# Commonwealth *v.* Wilson, Appellant.

*Criminal law—Forgery—Railroad tickets—Change of name of station—Evidence.*

1. One who personally uses a railroad ticket knowing that the name of a station originally written into the ticket had been erased and that the name of another station much further away, and for which a much greater fare is demanded is inserted, may be convicted of forgery both at common law and under sec. 169 of the Act of March 31, 1860, P. L. 382.

2. On the trial of an indictment for forgery a witness who was not an expert may be permitted to show the effect produced on ink and color by using a proprietary article, where a package of such article is shown by other evidence in the case to have been in the defendant's possession.

*Evidence—Witness—Cross-examination—Reputation.*

3. A witness who testifies to the general good reputation of one accused may be tested by asking him on cross-examination as to reports he has heard, or contradictory statements he has made, or other facts known to him, not for the purpose of discrediting the person whose reputation is involved, but solely for the purpose of affecting the credibility of the witness.

4. A witness called by the prisoner as a character witness, is properly excluded where it appears that he had seen the prisoner only a few hours each year on annual vacation visits, away from the community in which he resided, and that he did not know of any business transacted by the prisoner, nor of people who knew him.

Argued April 12, 1910.   Appeal, No. 38, Oct. T., 1910, by defendant, from judgment of Q. S. Clearfield Co., Dec. Sessions, 1909, No. 25, on verdict of guilty in case of Commonwealth v. D. A. Wilson.   Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ.   Affirmed.

Indictment for forgery.

In addition to the facts stated in the opinion of the Superior Court there was evidence which tended to show that the defendant used a railroad ticket in which the

184    COMMONWEALTH *v.* WILSON, Appellant.

Statement of Facts—Opinion of the Court.    [44 Pa. Superior Ct.

name "Riverview," a station about seven miles from his point of departure, had been erased and the words "York Haven, via. Hbg." had been written in its place. The fare from the place of departure to Harrisburg was $4.25. York Haven is a small place near Harrisburg.

Verdict of guilty, upon which judgment of sentence was passed.

*Errors assigned* were (1–19) various rulings on evidence and instructions, sufficiently stated in the opinion of the Superior Court.

*William I. Swoope*, for appellant.

*Hazzard A. Murray*, of *Murray & O'Laughlin*, with him *James H. Kelley*, district attorney, for appellee.

OPINION BY ORLADY, J., October 10, 1910:

The indictment under which this defendant was tried and convicted contains two counts. The first charges that he did unlawfully and fraudulently make and sign, etc., a certain railroad ticket, etc., on which count he was found not guilty. The second count charges that "he did unlawfully and fraudulently utter and publish as true and genuine a certain unlawfully and fraudulently written instrument, a railroad ticket, which unlawfully and fraudulently written instrument was unlawfully and fraudulently uttered and published as true, by offering it as genuine to the conductor on the Pennsylvania railroad train and (giving an exact copy of the ticket) to the prejudice of the right of the Pennsylvania Railroad Company, thereby making it good as a railroad ticket for one first class passage from Grampian to York-haven instead of to Riverview as was the true and original ticket, with an intent to defraud it, the Pennsylvania Railroad Company at the time he so uttered and published the said ticket . . . . well knowing the same to be a fraudulently written instrument, contrary to the form of the act of the general assembly in such case made and

provided and against the peace and dignity of the commonwealth of Pennsylvania." And on this second count the defendant was found guilty.

A motion to quash the indictment was made. First, because the offense charged does not constitute the crime of forgery under the laws of Pennsylvania; and second, because the facts set forth do not constitute a crime indictable under the laws of Pennsylvania, which was overruled and the defendant directed to plead to the indictment.

It is urged that sec. 169 of the penal code, Act of March 31, 1860, P. L. 382, under which the indictment was drawn, does not embrace the offense charged against the defendant and if he was liable to indictment at all it should have been under the Act of May 1, 1861, P. L. 465, which is a supplement to the earlier act. An examination of this later act shows that it was not intended to cover a case like the one under consideration, which discloses the unlawful use of a known fraudulently made ticket. Whereas the act of 1861 provides that whenever "any person in the employ of any railroad company, . . . . shall fraudulently neglect to cancel or return . . . . any coupon or other railroad ticket; or if any person shall steal or embezzle . . . . or shall fraudulently stamp or print or sign any such ticket or shall fraudulently sell or put into circulation any such ticket. . . ." This act is not intended to apply to a case where one personally uses for passage a fraudulently made ticket; had it been so intended the legislature would have adopted the word "use" as a verb, which is not, however, to be found in the act.

A further motion was made by the defendant to compel the commonwealth to elect upon which count a conviction was asked, and this was refused. The counts were not inconsistent and did not embarrass the defendant on his trial, for the reason that a conviction was asked upon both of them,—for making as well as for uttering and using, the theory of the commonwealth being

that both acts were consummated by the defendant, and that all the evidence to be adduced would be in support of that contention. This being the case, and no special reason for such election having been urged, the court rightly refused the motion.

Section 169 of our penal code of March 31, 1860, P. L. 382, provides: "If any person shall fraudulently make, sign, alter, utter or publish, or be concerned in the fraudulently making, signing, altering, uttering or publishing any written instrument, other than notes, bills, checks or drafts already mentioned, to the prejudice of another's right, with intent to defraud any person or body corporate, or shall fraudulently cause or procure the same to be done, he shall be guilty of a misdemeanor," etc. The commissioners who reported this code to the legislature say of this section, that "it was intended to embrace the large class of forgeries of written instruments, not embraced in the preceding sections, which have special reference to bank paper and which are not punished at common law."

The crime of forgery, at the present time, extends to a large number of subjects which were not in existence in the earlier periods of the criminal law, and some of them, in fact, have had their origin in the last half century. A railroad ticket such as is now in daily use was not in existence when the penal code was enacted; but the writing in this case,—the ticket,—is covered by all definitions and descriptions of the crime of forgery. Our code was not intended, because it could not possibly do so, to embrace all of the appliances, devices and methods of transacting our affairs; and as stated by the commissioners, "The common-law definitions of crimes are so clear, perspicuous and precise; the modes of proof, rules of evidence, and manner of procedure in criminal investigation are so well settled and known, that it is doubtful if they could be improved upon by a more skillful codification." The common law, as modified by our code, embraces the written instrument described in this indictment.

A railroad ticket has been held to be a receipt, a voucher, a contract, conclusive of a passenger's right to carriage, is transferable by delivery, represents a valuable consideration, and is property; and the fraudulent counterfeiting of such a ticket has been held to be forgery at common law: Com. v. Ray, 69 Mass. 441. In England the forgery of a railway pass, Regina v. Boult, 2 Car. & Kir. 604, as well as in this country in State v. Weaver, 94 N. C. 836; s. c., 55 Am. Repr. 647, has likewise been held to be forgery. In Biles v. Com., 32 Pa. 529, the Supreme Court refers with approval to Queen v. Griffith, 27 Law J. M. Cas. 204, in which case a station master of a railway company was held guilty of forgery in affixing a false receipt stamp to a printed form. Judge LUDLOW in Com. v. Cullen, 13 Phila. 442, says: "I happen to be familiar with this section of the criminal code. After Biles' case had been affirmed by the Supreme Court (1859) in 32 Pa. 529, the commissioners determined to settle the question of what should be forgery in this state, and for that purpose framed sec. 169 of the code. Its provisions are, and were intended to be sweeping."

Text-writers and judges agree that as a general rule any writing in such form as to be the means of defrauding another may be the subject of forgery, or of alteration in the nature of forgery. The offense may be committed in respect to any writing; which, if genuine would operate as the foundation of another's liability. If it is calculated to deceive and intended to be used for a fraudulent purpose,—that is sufficient: 13 Am. & Eng. Ency. of Law, (2d ed.) 1093. The offense of uttering a forged instrument consists in offering to another a false instrument which has capacity to injure, with a knowledge of its falsity, and with an intent to defraud: Whart. Crim. Law (11th ed.), sec. 703.

The terms "writing," "instrument" and "written instrument" are used indiscriminately in defining forgery at common law. Thus Blackstone says forgery is the fraudulent making or alteration of a writing, etc. Baron

Eyre says it is the false making of an instrument, etc. GROSE, J., says it is the false making of a note or other instrument, etc.    East says it is the false making of a written instrument: 2 East's P. C. 852.    And we can see no reason why the term "any written instrument, other than notes, bills, checks, or drafts already mentioned" as used in sec. 169 of our code should not be understood in the same sense, as when used by these early writers in defining forgery at common law, and be held to include a railroad ticket such·as is described in this indictment.    Many instances and illustrations may be found in Arnold v. Cost, 3 Gill & Johnson, 219; s. c., 22 Am. Dec. 302; see also as to a theater ticket, In re Benson, 34 Fed. Repr. 649; and as to an insurance ticket, People v. Graham, 43 N. Y. Super. Ct. 151.    In all the cases an intent to defraud is an indispensable ingredient and is the very gist of the offense, Com. v. Ladd, 15 Mass. 526; and this must be clearly set out in the indictment.    It follows that every requisite of definition in the law, and notice to the defendant was observed in the indictment; which was properly drawn under sec. 169 of our code.    The first, second, eighth and eighteenth assignments of error are overruled.

The record discloses a series of facts which are exceptional in their clearness and certainty.    It is manifest that this defendant was under suspicion, and his conduct was carefully observed so as to develop the material incidents by the testimony of witnesses who might and did testify from their personal observation and knowledge. The direction to purchase a ticket from Grampian to Riverview was shown by his friend and associate, who reluctantly testified to this important fact.    The transmission of this ticket together with a package, which had been procured by the defendant and was identified by three disinterested witnesses as being "Carter's Ink Eraser," as well as the tests made of that material's efficacy in removing ink marks before it was delivered with the special ticket, which in turn had been identified by

the agent who sold it and had made a memorandum of its serial and station number; and the defendant's use of the ticket with the knowledge that the price of the ticket as originally issued was but twenty-five cents, and as changed by substituting Yorkhaven for Riverview was worth more than $4.00; the fact that witness Hahn was corroborated by three eye-witnesses, and the conductor on the train who had been advised in advance to look out for this specially numbered ticket, as well as the special officer who made the arrest, all combined to furnish proof in regard to the genuine ticket as issued by the company and the altered ticket as presented by the defendant, that could not be answered.

The witness, Sparling, did not pretend to be an expert, nor was he examined as such; his testimony in relation to the "Carter's Ink Eraser" on the trial was but an exhibition of the effect produced on ink and color by using that common proprietary article. Any juror could have given the same demonstration, and its fairness was made apparent when done before the jury in the presence of the defendant and his counsel. The damaging fact was that this "Carter's Ink Eraser" as used in the court was an exactly similar package and preparation as to its size, name, and efficacy as the one which Wolfley, the associate of the defendant from Harrisburg, had put in the pocket of the defendant's coat at Grampian to be taken by Hahn, together with the Riverview ticket to the camp where the defendant was waiting for it. By the testimony of Williams, the agent of the company who sold the ticket, and of Hahn, the ticket was genuine when at Grampian, and altered when presented for passage a day or so thereafter to the conductor of the train. The testimony of Sparling was properly admitted and the defendant had full opportunity of verifying the tests he made before the jury by a proper cross-examination. The third, fourth, fifth and fourteenth assignments of error are overruled.

The defendant opened a wide door in putting his char-

acter in evidence as a defense, and the error complained of in the sixth assignment would be more serious if offered by the commonwealth; but the witness Spade was called by the defendant and after having stated that he had "never heard anything against him," was asked on cross-examination "if he did not know of Wilson having been arrested for attempting to pass counterfeit money," and on objection being made, the court held that the commonwealth had the right to cross-examine the witness as to Wilson's reputation for honesty and good character, because he had put that in question. A witness who testifies to the general good reputation of one accused may be tested by asking him on cross-examination as to reports which he has heard or contradictory statements he has made, or other facts known to him, not for the purpose of discrediting the person whose reputation is involved, but solely for the purpose of affecting the credibility of the witness. In this case the question did no harm, as the answer was in the defendant's favor; the witness having stated "that all the officers concerned said it was but spite work and he was discharged by the Mayor and there was never any prosecution." The general rule in such cases is announced, in 8 Ency. of Pl. & Prac. 115, to be "A witness who testifies to the good reputation of a party or another witness may be cross-questioned concerning specific facts and rumors which are inconsistent with his direct testimony. This is permitted, not for the purpose of proving such facts, but to weaken the force of his direct testimony. So, also, a witness who testifies to the bad character or reputation of another person may be cross-examined as to the specific facts upon which his conclusion is based, in order that the jury may properly estimate the value of his testimony."

The testimony of Grant Wood, called by the defendant as a character witness, was properly excluded; as he had seen him but a few hours each year on annual vacation visits, away from the community in which he re-

sided, and did not know of any business transacted by the defendant, or of people who knew him. This is too meager in facts or knowledge of reputation of the defendant to give any idea of his general reputation at home or at Grampian.

The case was submitted to the jury in a clear, fair and adequate charge which fully presented the defense as to each count; and the court affirmed the defendant's point as to good character, so that feature of the case was brought prominently to the attention of the jury. There is nothing in this record to indicate any abuse of discretion in imposing the sentence of which complaint is made. No one of the assignments of error is sustained. The judgment of the court of quarter sessions is affirmed, and it is ordered that the defendant appear in the court below at such time as he may be called, and that he be then committed to serve that portion of his term of imprisonment which had not expired at the time this appeal was made a supersedeas.