## Commonwealth *v.* Pearlman, Appellant.

Argued September 28, 1936. 

 Before
KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD,
PARKER, JAMES and RHODES, JJ. 

*Abraham Wernick,* for appellant.

*Vincent P. McDevitt,* Assistant District Attorney, with him *Charles F. Kelley,* District Attorney, for appellee.

464

OPINION BY JAMES, J., April 15, 1937:

Samuel I. Pearlman was convicted and sentenced on an indictment to No. 473, February Term, 1936, charging him with having on the 13th day of November, 1934, been concerned in the making of a fraudulent written instrument commonly known as and called a recognizance bail bond and justification of surety, before a magistrate, and with actually uttering and publishing it. Although sentence was solely on this indictment, he had been jointly tried and convicted upon twelve other indictments charging similar offenses on different dates before different magistrates, and an indictment charging conspiracy. Sentence was suspended on these indictments. In all of the indictments, Michael Warren and his wife, Ethel Warren, alias Dora Sarsoff, were jointly indicted with defendant. Prior to the trial, Michael Warren and Ethel Warren pleaded guilty to all of the above indictments and also to a number of indictments charging them with perjury, upon which sentence was not imposed. Defendant's motion for a new trial having been refused, sentence was imposed, from which this appeal was taken.

Appellant submits ninety-one separate assignments of error. We have given consideration to all of them, but owing to their number and character, we shall only discuss at length those assignments which we believe worthy of consideration. The record contains nearly 600 pages of testimony, a resumé of which cannot be better stated than as set forth in the opinion of the court below in refusing the motion for a new trial: "Michael Warren and Ethel Warren testified, in substance, that defendant, having heard that the Warrens were going bail, got in touch with Michael Warren by telephone; that subsequently the two Warrens and defendant had a conference at which the Warrens produced three deeds in which Dora Sarsoff, the mother of Ethel Warren, was named as grantee; that these deeds

had been stolen from Dora Sarsoff; that an arrangement was then agreed upon whereby when defendant wished to have bail entered he would telephone to Michael Warren, who would in turn get in touch with Ethel Warren, and Ethel Warren would then go to defendant's office and the two of them together would go to the office of the magistrate in question, where Ethel Warren would be introduced to the magistrate as Dora Sarsoff, would present her mother's deeds, and would sign the name Dora Sarsoff to the bail bond; that this procedure was followed many times, and that the Warrens received three percent as their commission for entering bail; that Ethel Warren became alarmed at the amount of bail which she was entering and protested, but defendant urged her to perjure herself as to the assessment of the properties in question and as to the amount of bail for which the properties were already security; that Ethel Warren did so perjure herself and the magistrates continued to take her as bail. This testimony of the Warrens was corroborated to some extent by defendant and to some extent by other witnesses called on behalf of the Commonwealth. Defendant testified that he had a meeting with Michael Warren, and that subsequently Michael Warren represented that Ethel Warren was his (Michael Warren's) secretary, and that her name was Dora Sarsoff; that defendant went with Ethel Warren on four occasions when bail was being entered, but did so in the belief that Ethel Warren was in fact Dora Sarsoff, and was a single woman; that in regard to the other nine transactions defendant had no connection with them whatever. Defendant denied that he ever urged Ethel Warren to commit perjury, or that he knew that she did so."

Appellant's argument may be divided and considered under three general headings: First, errors in the charge of the court; second, rulings on the admission

of evidence; and third, the dismissal of a motion to set aside the verdict and a motion for a new trial.

In regard to the charge, the first group of assignments, 78, 79 and 80, relate to that portion of the charge which states that the jury might convict if the defendant knew that the maker of the bail bond was a married woman or that the bail bond contained false statements. The relevant portions of the charge are as follows: "Now, members of the jury, what is the element of fraud averred here by the Commonwealth: First, that the name of the person who signed the bonds was Ethel Warren and not Dora Sarsoff, and that she signed the name Dora Sarsoff without the authority of the real Dora Sarsoff. If so, those papers were fraudulently made and uttered within the meaning of the Act of Assembly. Second, that the person who signed the bonds was a married woman and the signature which she affixed thereto was the signature of a married woman. A married woman cannot be held liable on such an obligation in the Commonwealth of Pennsylvania; so, if a married woman, knowing that defect in her suretyship, signs such a bond, concealing the fact that she is married, that would be fraud. So if that element is present in this case the bonds in question were fraudulently made and uttered. Third, there is testimony to the effect that the bonds were supported by perjured statements, perjured statements as to assessed valuations and perjured statements as to other securities for which that particular property had been pledged. I say to you if these bonds were supported by perjured statements of that nature they were made and uttered fraudulently and contrary to the provisions of the Act ...... So the test to apply to Pearlman after you have determined whether he was concerned in any way, in four or in thirteen, is whether he knew of the fraud that was going on or whether he was acting in innocence. Did Pearlman know that the person who

signed these bonds was not Dora Sarsoff? Did he know that she was a married woman? Did he cause her to make the false statements supporting those bonds? If you find in regard to any particular indictment that he was not at all concerned in it, he is out of the picture and he is not guilty. If you find that he was concerned in it, then the test to be applied to him is whether he was concerned with knowledge that the person who signed was not Dora Sarsoff, or with knowledge that she was a married woman, and therefore worthless as bail; or, if he was concerned in such a way as to induce her to make false statements; if so, if any one of those three are in any case, he is guilty in that case. If not, he is not guilty."

The record is replete with testimony from which the jury could find that appellant knew Ethel Warren was not Dora Sarsoff, that she was a married woman and as such could not enter bail, and that the statements made in the bonds were false.

Appellant contends that the charge as quoted above is erroneous because the Act of March 31, 1860, P. L. 382, §169, 18 PS §3631, applies only to forgeries and not to the making, uttering or publishing of instruments which contain false statements but not forged signatures. He argues that there is a distinction between *fraudulently made* instruments and *fraudulent instruments,* and that the statute applies only to the former. Appellant relies largely on *De Rose v. People,* L. R. A. 1918 C. 1193-95, a Colorado case. In that case it was held that the defendant, in making up and signing a time roll, in which he had made a false statement, did not violate a statute prohibiting the "false making" of an instrument. In *Biles v. Com.,* 32 Pa. 529, it was held that the making of a false entry in a journal by a bookkeeper with intent to defraud his employer was a forgery at common law. The forgery was perpetrated

by the false addition of the items of cash from bills receivable on a page of the journal of the firm.

A year later, the Act of 1860, supra, under which appellant was indicted, was enacted. It reads: "If any person shall fraudulently make, sign, alter, utter or publish, or be concerned in the fraudulent making, signing, altering, uttering, or publishing any written instrument, other than notes, bills, checks or drafts already mentioned, to the prejudice of another's right, with intent to defraud any person or body corporate, or shall fraudulently cause or procure the same to be done, he shall be guilty of a misdemeanor, and, on conviction, be sentenced to pay a fine not exceeding one thousand dollars, and to undergo an imprisonment, by separate or solitary confinement at labor, not exceeding ten years."

It is pointed out in Purdon's historical note that, "This section is intended to embrace the large class of forgeries of written instruments, not embraced in the preceding sections, which have special reference to bank-paper, and which are now punished at common law. Report on the Penal Code, 36." See also *Com. v. Wilson,* 44 Pa. Superior Ct. 183, as to the report of the commissioners who reported the code to the legislature. In that case at page 187, it is said: "Judge LUDLOW in *Com. v. Cullen,* 13 Phila. 442, says: 'I happen to be familiar with this section of the criminal code. After Biles' case had been affirmed by the Supreme Court (1859) in 32 Pa. 529, the commissioners determined to settle the question of what should be forgery in this state, and for that purpose framed sec. 169 of the code. *Its provisions are, and were intended to be sweeping.'* Text-writers and judges agree that as a general rule any writing in such form as to be the means of defrauding another may be the subject of forgery, or of alteration in the nature of forgery. The offense may be committed in respect to any writing,

which, if genuine, would operate as the foundation of another's liability. If it is calculated to deceive and intended to be used for a fraudulent purpose,—that is sufficient: 13 Am. & Eng. Ency. of Law, (2nd ed.) 1093. The offense of uttering a forged instrument consists in offering to another a false instrument which has capacity to injure, with a knowledge of its falsity, and with an intent to defraud: Whart. Crim. Law (11th ed.), sec. 703." (Italics supplied).

It seems, therefore, that by the Act of 1860 it was intended to make statutory the common law rule of the Biles case. That case is in direct conflict with the rule of the DeRose case, and the rule of the latter case is not law in Pennsylvania. The rule of the Biles case seems to govern the case at bar. Under that case the charge of the lower court was a proper statement of the law. If this appellant knew that Ethel Warren was a married woman and yet induced her to give bail, knowing that a married woman could not give bail, or if he induced her to make false statements as to assessed value or as to other securities, for which it had been pledged, then he was concerned in fraudulently making the bond.

The second alleged error in the charge of the court is raised by the 81st assignment. The pertinent portion of the charge is as follows: "Now, on what does the testimony as to his guilt depend? Mr. and Mrs. Warren go on the witness stand and they tell a story which if one hundred percent believed by you makes out a perfect case against the defendant on every bill of indictment on which he is on trial. I need not review that testimony as to the meeting, with the deeds before them, and the putting aside of the one which speaks of Dora Sarsoff as a married woman. They tell of the conversation; they tell of the subsequent telephone calls; of Pearlman's statements to the wife that she should make certain false representations, and so

forth and so on. It is an absolute tie-up, it proves guilt if believed." It is urged by appellant that the court should have differentiated between the various bills and counts contained therein. There were fourteen indictments in all and appellant was found guilty on all counts of all indictments. Appellant was sentenced on Bill No. 473, the second count of which states that the defendant and the Warrens did on a certain day unlawfully and fraudulently utter and publish as true a certain unlawfully and fraudulently written instrument known as a bail bond. Appellant's objection is that the second count does not charge that defendant was *concerned* in the fraudulent uttering or publishing, nor with *causing or procuring* the same to be done, but with actually uttering and publishing. Appellant's position is that the testimony of the Warrens does not make out a case that this defendant uttered and published the instrument. The court charged that defendant did not sign any of the bonds nor did he utter them. This was more favorable to appellant than he was entitled to, as the evidence showed that on each occasion he was present with Ethel Warren, and participated in the uttering and publishing of the false instruments. In any event, since there was a general sentence on the indictment, we are constrained to follow the rule that if there is one count in an indictment which will sustain the sentence, there can be no reversal although there are other counts which are not sustained by the evidence: *Com. v. McDermott,* 37 Pa. Superior Ct. 1; *Com. v. Stanley,* 39 Pa. Superior Ct. 402; *Com. v. Rothensies,* 64 Pa. Superior Ct. 395.

The third group of alleged errors in the charge is the refusal to affirm the appellant's 1st, 2nd, 5th, 9th, 14th, 15th, and 16th points for charge, being assignments 1 to 7 inclusive. The first point for charge was for a directed verdict on all bills charging appellant with fraudulently making, uttering and publishing a writ-

ten instrument. Since appellant was sentenced only on Bill No. 473, it would seem unnecessary to discuss the question of whether or not there should have been a directed verdict on the other bills. And in accordance with our opinion as to assignment 81, a failure to direct a verdict as to the second count would not be reversible error, since the rule is that if one count in an indictment will sustain a sentence there can be no reversal although there are other counts which may be bad. The second point for charge, declined by the court, asked for a directed verdict on the conspiracy count. That count was not a part of Bill No. 473 and sentence was not imposed on that count, and, therefore, need not be considered on this appeal. Appellant's fifth point, which was declined by the court, was a point regarding the law of reasonable doubt and the presumption of innocence. The court took considerable care in stating to the jury that they must examine the testimony of accomplices with the greatest care, and that it would be dangerous to convict on the testimony of the Warrens alone. The court then said: "But search the record for corroboration, and if you cannot find corroboration which convinces you beyond a reasonable doubt, the safest course would be to bring in a verdict of not guilty," and continued: "...... in considering all fourteen bills you will bear in mind that every man that comes before you is presumed to be innocent and the burden is on the Commonwealth to the finish of the case to convince you beyond a reasonable doubt of the guilt of the defendant before you can convict him. A reasonable doubt is not a fanciful or conjectural doubt, not a possible doubt, but it is a doubt arising in the evidence and of such a nature as if arising in the important affairs of your own life would cause you to hesitate in coming to a decision. Whenever a doubt of this sort arises in the case, or in any part of the case, the doubt should be

resolved in favor of the defendant." It seems to us that appellant's fifth point for charge was amply and correctly covered by the court in its charge.

Appellant's ninth point, declined by the court, stated that if the jury believed that Dora Sarsoff acquiesced in her daughter's acts of signing her mother's name, then Ethel Warren and the defendant were not guilty of forgery or uttering fraudulent instruments. This is fully answered in the opinion of the court below when it said: "All of the testimony of the Commonwealth was to the effect that the Warrens had stolen the deeds, and that Dora Sarsoff had no knowledge as to the entering of bail by Ethel Warren. Defendant himself did not testify that he believed that Ethel Warren had authority from Dora Sarsoff, but that he believed Ethel Warren was in fact Dora Sarsoff. We can see no basis on which a jury could possibly have found that defendant knew Ethel Warren was not Dora Sarsoff, but believed that she had authority from Dora Sarsoff to sign the name of Dora Sarsoff. There being no evidential basis for such a finding, this point was properly refused." Appellant's counsel in his brief states that a very vital and crucial question put to Dora Sarsoff was whether she disavowed the acts of her daughter, to which she replied, "I don't remember." Counsel would lead us to believe that this was an evasive answer. However, the record disclosed that Dora Sarsoff did not understand the meaning of the word "disavow." That fact completely nullifies the damaging effect, if any, of her answer. She apparently replied, "I don't remember" to a number of questions which she did not understand. The record does not disclose that Dora Sarsoff knew that her daughter was using the properties for bail purposes. The ninth point was properly declined.

The fourteenth point for charge was that since the Warrens pleaded guilty to perjury their testimony

should be rejected. This point was properly declined. At the time they testified the Warrens had not been sentenced and were therefore competent to testify against the appellant: *Com. v. Miller*, 6 Pa. Superior Ct. 35; *Com. v. Lewandowski*, 74 Pa. Superior Ct. 512. We see no reason for distinguishing between a verdict of guilty by a jury and the entry of a plea by a defendant. The fifteenth point asked the court to direct the jury to reject Ethel Warren's testimony because her memory was unreliable. The sixteenth point asked an instruction that she was a liar and should not be believed. The court in its charge carefully pointed out that the testimony of Ethel Warren should be examined with extreme care because she was a confessed perjurer. The court also affirmed appellant's sixth point for charge, which was to the same effect. The credibility of this witness and the weight of her testimony were properly left to the jury.

Assignment 91 raises the question of the adequacy of the charge as a whole. It is argued that the court should have called the jury's attention to specific contradictions of Ethel Warren's testimony. Such contradictions affect the credibility of the witness, but the jury were adequately warned as to the weight and credibility of her testimony. The court did point out that some of the testimony was corroborated to some extent, and flatly denied to some extent. It was not necessary in the charge to comb the testimony for every evidence of inconsistency or contradiction.

It is further argued that grave error was committed in the failure to tell the jury that Ethel Warren and Michael Warren are not two witnesses in the sense that they corroborated each other. The court charged the jury, "that it would be dangerous to convict this man on the uncorroborated testimony of the two Warrens . . . . . . But search the record for corroboration, and if you cannot find corroboration which convinces you be-

474

yond a reasonable doubt, the safest course would be to bring in a verdict of not guilty." The court did not say that the testimony of either corroborated each other. In the absence of a specific request, appellant was fully protected by this language.

Assignments 69, 70, 71, 72, 73, 74 and 75 relate to remarks of the district attorney during his examination of witnesses and in his address to the jury. Although no exception was taken as to several of them, we have considered all and find them to be of a trivial character and not likely to have prejudiced or, in any manner, influenced the jury. To justify a reversal, the language or conduct of the district attorney must be such that its unavoidable effect would be to prejudice the jury: *Com. v. Wilcox,* 112 Pa. Superior Ct. 240, 170 A. 455.

Assignments 76, 77, 80, 81, 82, 83, 84, 85, 86 and 87 relate to certain remarks by the trial judge made during the course of trial and in the charge. Assignments 76 and 77 relate to the statement in the charge that, "Arguments of counsel, as I said a moment ago, are important and worthy of serious consideration, but oratory can be disregarded. Taking the oratory of one side, you and I are not at all interested in the effect of the acquittal or conviction of this defendant, or other persons. If he is guilty he should be convicted, no matter what that effect will be. If he is not guilty he should be so found, no matter what that effect will be. Similarly, we are not at all interested in the fact that tomorrow is Memorial Day. If he is guilty he should be found guilty, even though tomorrow be Memorial Day; and if not guilty he should be so found, whether tomorrow be Memorial Day or not." We have quoted the charge more fully than has counsel in his assignments. Thus viewed, the objections vanish. The court states that *arguments* are important and worthy of serious consideration. *Com. v. Brown,* 309 Pa. 515,

164 A. 726 requires no more than that. It was proper to call the jury's attention to the difference between argument and mere oratory. The remarks as to the effect of Memorial Day on this trial are clearly not objectionable: *Com. v. Nelson,* 294 Pa. 544, 144 A. 542.

Assignment 82 relates to a question asked Magistrate Panetta as to whether he recalled that a certain property, which he took as security, had already been given as security. The court sustained an objection, saying, "We are not trying the Magistrate; we are trying Pearlman." This particular testimony pertained to a bond not involved in any of the indictments and counsel for appellant had previously questioned the magistrate as to a number of bonds which were not the subject of indictment. The court has the right to control the latitude of examination which purports to be directed to affect a witness's credibility. The magistrate might well have refused to answer this question on the ground it might have incriminated him, and the court had the right to protect the witness. Even had the witness known that the property had been taken previously, as security, we do not see how that would affect this case.

Assignment 83 deals with a question asked by counsel whether the witness, Dora Sarsoff, knew she was testifying against the Warrens. It is true that her testimony involved the Warrens, but they were not being tried and the court committed no error when it sustained an objection by adding as its reason that she had not testified against the Warrens. Moreover, the question asked was clearly argumentative and should not have been asked.

No objection was taken to the remark embodied in assignment 84, which was, "Well, I am expecting the District Attorney to object." This is harmless. The court had the right of its own motion to exclude immaterial and irrelevant testimony. So also the matter raised by assignment 85 was not objected to. The re-

mark was harmless. Assignment 86 also deals with matter to which no objection was taken. The remark, "You are entitled to a change of pace in this game ......" was made when appellant's counsel objected to shouting by the district attorney. This, too, seems to have been harmless error. Counsel apparently thought so at the time since he made no objection.

As to assignment 87, counsel again submits a remark to which he took no exception at the time. Appellant's counsel offered in evidence a number of bonds signed by Joe Sarsoff and Mike Warren. The court sustained an objection to the offer. Counsel then offered to show that Mike Warren had signed both as Warren and as Sarsoff. The court sustained an objection and remarked, "You have him heavily tarred already, without tarring him any more." The proposed offer was merely cumulative evidence of what had already been admitted and what the court very clearly pointed out to the jury in the charge; that is, that Warren was a perjurer. The court had the power to limit a lengthy examination on a collateral issue relating to a fact already proven and admitted.

The foregoing disposes of the numerous assignments of error alleged to have been committed in the charge of the court. We will now discuss assignments 8 to 68, which deal with rulings on admissibility of evidence.

Under assignments 12, 13 and 16a, appellant argues that both Michael Warren and Ethel, his wife, were incompetent to testify against each other. The Act of May 23, 1887, P. L. 158, as amended by the Act of May 11, 1911, P. L. 269, 19 PS §683, provides: "Section 2. In such criminal proceeding: (b) Nor shall husband and wife be competent or permitted to testify against each other," subject to certain exceptions not here important. The basis of this section is to prohibit testimony of either party to the marriage relation so far as to incriminate the other party to the contract.

It was intended as a protection for either spouse. When the husband and wife voluntarily testified, their status had been determined by their separate pleas of guilt and the only question before the court was the guilt of appellant. Their testimony was not against each other, as neither was on trial, but solely against appellant. In *Com. v. Reid,* 8 Phila. 385, Judge PAXSON, later Chief Justice of our Supreme Court, sustained the competency of a wife to testify in a separate trial against a defendant who had been jointly indicted with her husband. The reasoning is directly applicable to the present facts. In the course of his opinion, Judge PAXSON observed that a wife would not be competent when her husband and another were charged with a conspiracy, as the offense was joint. Here, however, both had pled guilty to the indictment for conspiracy and the exception mentioned would not apply. The cases of *Cornelius v. Hambay,* 150 Pa. 359, 24 A. 515; *Canole v. Allen,* 222 Pa. 156, 70 A. 1053, relied upon by appellant, are clearly distinguishable from the present case. See also *Haas v. Fitzpatrick,* 117 Pa. Superior Ct. 21, 177 A. 326. Appellant had no standing to object to any disclosure of confidential communication by the husband and wife; it was their privilege to waive the prohibition of the statute.

Assignment 20 charges error in the refusal to direct the district attorney to produce certain bonds regarding other defendants who were not on trial and which might tend to incriminate them. The court properly refused to so direct. Assignments 23 and 30 deal with the refusal to permit questions to the magistrates as to other bonds made by the Warrens or as to the total number of bonds taken during a month, whether from these defendants or otherwise. It is difficult to see the relevancy of such testimony. Assignments 32 and 48 relate to rulings made during the examination of Dora Sarsoff. The 38th and 39th we have already answered.

In the 36th and 37th the questions asked had been answered before. Assignments 32, 33, 34 and 35 relate to matters which were irrelevant, as do the 40th, 41st, 42nd, 43rd, 45th, 46th, 47th and 48th.

Assignment 51 relates to the admission of the magistrates' transcripts that had been returned to the court of quarter sessions, and which had been identified by the several magistrates while on the stand. It is difficult for us to see what stronger proof could have been produced. In *Magee v. Scott*, 32 Pa. 539, relied upon by appellant, the transcript was offered solely on the certificate of the justice. Assignments 53 to 62 pertain to the refusal to permit the examination of John Warren, alias John O'Neill, as to the entry of bail by the witness before several magistrates upon property on Reno Street, which the witness denied he was the owner of. Appellant was attempting to cross-examine his own witness as to matters which were irrelevant, and the objections were properly sustained.

Assignments 65 and 66, as to the refusal to admit testimony that the appellant was engaged as an investigator from 1932 to 1936, are without basis. The 67th assignment deals with the refusal to permit in evidence all the other indictments in which Michael Warren was involved. The indictments prove nothing except that he was indicted, and were irrelevant. Assignment 69 deals with the refusal to admit certain bonds which were not the subject of indictment here. For this we give the same answer given to assignment 87, above.

The remaining assignments, under this heading, we shall not specifically answer. Some relate to points that have already been covered and others relate to questions, the control of which was within the discretion of the court. We find no error in these rulings.

Under assignments 88, 89 and 90, error is alleged in the refusal to grant a new trial, to set aside the

verdict on the insufficiency of the testimony, and in imposing sentence. The foundation of the Commonwealth's case was the testimony of Michael Warren and Ethel, his wife, whose competency we have upheld and whose credibility was a question solely for the jury. It will serve no useful purpose to give a more elaborate statement of the facts than we have already given, suffice to say that the proof, if believed, established beyond question the guilt of appellant. We find no error at the trial and sentence was properly imposed.

The assignments of error are overruled, the judgment is affirmed, and the record remitted to the court below and it is ordered that the defendant appear in the court below at such time as he may be there called, and that he be by that court committed until he has complied with the sentence, or any part of it, which had not been performed at the time the appeal in this case was made a supersedeas.