## Sherwood *versus* Titman.

1. In an action for crim. con. brought after the husband and wife had separated, evidence of improper intimacy before separation had been given: *held*, that evidence of similar conduct after separation was proper.

2. The defendant having given evidence of what had been said and done on a particular occasion between the plaintiff and his wife, it was competent for the plaintiff to show not as contradiction merely, but as independent rebutting testimony, by another witness what occurred on the same occasion.

3. What had been said by defendant to another in relation to allegations by the plaintiff against him, was evidence.

March 13th 1867.     Before WOODWARD, C. J., THOMPSON, STRONG and AGNEW, JJ.     READ, J., absent.

Error to the Court of Common Pleas of *Susquehanna county*.

This was an action on the case, commenced July 24th 1861, by Jacob Titman against Thomas J. Sherwood, for criminal conversation with plaintiff's wife.

It appeared by the testimony for the plaintiff that he and his wife had separated about or before April 1st 1861.   He also gave evidence of conduct between his wife and the defendant tending to maintain his cause of action; he then offered to prove that " in June, 1861, before the commencement of this suit, Ellen Titman, plaintiff's wife, went from a neighboring house into the woods at a distance from any house; that Sherwood came across lots and met her; that they passed out of sight together and remained for a short time, and then came out into the road and talked for a little time and separated, he going in one direction and she in another." The defendant objected to the testimony, but it was received, and an exception noted.

The defendant examined his son, who testified that he had gone for a scrivener at the request of plaintiff to come to his house to " draw a divorce" between plaintiff and his wife; that the wife was present, and appeared to be willing for it; the witness testified also to what had been said and done after the scrivener came. In rebuttal, the plaintiff proposed to prove by the scrivener that " he went to plaintiff's house at the time spoken of by defendant's witness to draw writings, and to prove further the declarations of plaintiff to and in presence of his wife as to the cause of separation—and that this was upon the eve of and before the separation." This was objected to by the defendant, but admitted by the court, and an exception noted.

The witness testified that the plaintiff then alleged that the conduct of the defendant was the cause of the separation from his wife.

The plaintiff further proposed to prove by a witness that he " had had a conversation with defendant just before the separation, in which he told him that plaintiff had told him that he had seen

[Sherwood *v.* Titman.]

improper conduct between his wife and defendant, and had come over to get his horse to go to Montrose to prosecute him; that he would not live with his wife any more on his account; and that the defendant replied that if he did prosecute he would law him till he got him behind the grates and the prisoners carried him out of the key-hole; and that this was also stated in presence of plaintiff and defendant." This was objected to by the defendant, but admitted, and an exception noted.

The court (Williams, P. J.) charged, amongst other things:—

" If the result of such examination is to lead you to the conclusion that the defendant did not commit the crime alleged, that will end your labors in this case. If you arrive at the opposite conclusion, it will be your duty to advance to the consideration of the next question, viz.: was such adultery the cause of the separation. If it was the cause, or contributed to bring about the separation, then your verdict should be for the plaintiff, and your next inquiry is in relation to the measure of damages. * * *

" * * * Should you arrive at this point, we instruct you to take into consideration the situation of the husband, the plaintiff, the loss of society, of companionship; the character of the injury (the debauching of his wife) which he has sustained, and in the exercise of a sound discretion compensate him for the injury sustained.

" * * * If Ellen Titman was a common prostitute, and her prostitution was with the knowledge and assent of her husband, he cannot recover; but until his assent is shown either by knowledge and acquiescence or otherwise, he cannot be regarded as having abandoned his marital rights, or put himself outside the protection of the law. If you believe from the evidence that Ellen Titman was a common prostitute, and that her husband was assenting to such course of life on part of his wife, he cannot recover."

There was a verdict for the plaintiff for $371.

The defendant removed the case by writ of error, and assigned for error the ruling as to the evidence and the above portions of the charge.

*R. B. Little,* for plaintiff in error, cited 2 Greenlf. Ev. § 57.

*A. Chamberlain* and *W. H. Jessup,* for defendant in error, cited Graham *v.* Wigley, 2 Roper on Husband and Wife 319; Headley *v.* Carter, 8 N. Hamp. 40; Story on Bailments 339; Tompkins *v.* Saltmarsh, 14 S. & R. 275; Catison *v.* Catison, 10 Harris 275; 2 Greenl. Ev. § 51; Shoemaker *v.* Livezly, 2 Br. 286.

The opinion of the court was delivered, March 25th 1867, by

[Sherwood *v.* Titman.]

THOMPSON, J.—The first assignment of error has reference to the admission on the trial below, of certain testimony offered by the plaintiff, of the conduct of the defendant, and his (the plaintiff's) wife, in June 1861. The objection was that it had already appeared by the plaintiff's testimony that he and his wife had separated in the month of April preceding ; that they had ceased to live together ; but there was nothing to show that either had relinquished his or her marital rights as against the other. There may be some ground to dispute whether, after a separation, in which the cause is the adultery of the wife, and she with her husband's wish and consent has left his bed and board and protection, he could maintain an action against one for debauching her. The loss of society and comfort enters so largely into the grounds of the action that respectable writers think he could not, although the marriage bonds remain unbroken in law ; and there are opinions and analogies the other way. But we need not resolve this question in any particular way in order to sustain the ruling of the court in regard to this testimony.

The proof here shows an improper intimacy between the defendant and plaintiff's wife, for over a year prior to the separation. Its criminal character was denied and the truth of the witnesses, who gave to it other than an innocent meaning and aspect, disputed. After the separation, with less regard perhaps to appearances than before, they continued their intimacy, and thus their acts served to interpret their previous conduct; to render that which had been left doubtful, certain, in the minds of the jury. " When the fact of adultery is alleged to have been committed," says Greenlf. Ev., vol. 2, § 47, " within a limited period of time, it is not necessary that the evidence be confined to that period, but proof of acts anterior to the time alleged, may be adduced in explanation of other acts of like nature within that period." In Gardner *v.* Madeira, 2 Yeates 466, which was an action of crim. con., the court, on the point under consideration, said, " after laying a reasonable ground to infer an improper connection between the parties within the limited period, the court will be more liberal afterwards in receiving other evidence of indecent conduct at other times, tending to show the criminal views and acts of the parties." Somewhat analogous is the rule in slander, which permits proof of the speaking of the words after suit brought. The proof interprets the motive and the malice in speaking the words charged. Neither argument nor authority has been submitted by the able counsel who prepared the paperbook for the plaintiff in error on this point. With all proper respect for his opinion, his confident assertion of error in the ruling does not satisfy us. We think there was no error in it.

2. The second error is also without merit. The defendant had introduced testimony by the mouth of his own son, of what had been

[Sherwood *v.* Titman.]

said and done between the plaintiff and his wife, on the occasion
of the introduction of a person the witness had brought to plain-
tiff's house, at his request, as he testifies, to draw up an agreement
of separation between them; and he testified not only to what
took place on that occasion, but what was said by them as the
reason and cause of the separation. It was therefore entirely
competent for the plaintiff, not by way of contradiction merely,
but as independent, rebutting testimony, to show what he alleged
transpired at the same time and place, by another witness pre-
sent. In doing this the witness, Kellog, who was the scrivener
to draw up the agreement of separation, introduced the name of
the defendant, as declared on part of the plaintiff, in presence of
his wife, to be his reason for desiring a separation from her. He
charged his misconduct with his wife as moving him to do what
he was then about. Clearly it was evidence in this respect, if
not strictly *res gesta*, a point which need not be determined. The
defendant opened the door for the testimony, and cannot complain
that it was not closed soon enough to suit him.

3. This error was predicated of a conversation between the
witness and defendant in relation to what the plaintiff had alleged
against the latter in regard to having intercourse with his wife.
What was said, and what answer the defendant gave, was surely
evidence. If he had admitted the charge to be true, it would
have been evidence, and what the charge was would have had to
be stated in order to get the reply. So if he prevaricated, his
answer would be evidence: but what he prevaricated about would
have to be stated. It is too plain for argument or authority that
this testimony was properly evidence.

4. The errors to the charge of the court will be considered
together, they are two in number. The complaint seems to be that
the learned judge, after instructing the jury that if they believed
from the evidence that it was the adultery of the plaintiff's wife
with the defendant, which caused the separation or conduced to
bring it about, the verdict should be for the plaintiff; and added
a qualification claimed in the defence, although there was no
point submitted to raise it, "that if Ellen Titman, (plaintiff's
wife) was a common prostitute, and her prostitution was with
the knowledge and assent of her husband, he cannot recover; but
that until his assent is shown, either by knowledge and acquies-
cence, or otherwise, he cannot be regarded as having abandoned
his marital rights or put himself outside the protection of the
law." It is claimed that in place of putting this portion of the
defence on the ground of "knowledge or acquiescence" "or
assent" of the husband to the prostitution of his wife, the judge
should have charged that if she was a prostitute by the "passive
sufferance or connivance of the husband, it would bar the action;"
2 Greenlf. Ev. § 51. There is scarcely a shade of difference in

[Sherwood *v.* Titman.]

these forms of expression. " Passive sufferance" and " conniv-
ance" imply knowledge, and if the acts suffered were without
remonstrance, it would be assent although perhaps not choice.
If there really was a preference as to the terms in which the idea
should have been presented to the jury, it was the province of
the counsel to have suggested it to the court, and then on failure
of being indulged in the preference, we would doubtless have
felt ourselves more imperatively called upon to scrutinize the
distinction between the terms used and those preferred : to have
noted the tints of coloring, and whether the one cast a deeper
shade over the features of defendant's case than in strictness
could be approved, and to have corrected the faulty execution if
it existed.    Such a picture of propriety had the defendant caused
to be presented, that it should not have been marred by any
departure from strict rule.    But this was not done, and it was
quite as well it was not, for we doubt if we could, with the natu-
ral powers of vision, have discovered any real difference between
these forms of expression in their applicability to a case like
this.

Seeing nothing to correct, the judgment is affirmed.