Commonwealth *v.* Kauffman, Appellant.

Argued April 17, 1944. Before KELLER, P. J., BALDRIGE, RHODES, HIRT, KENWORTHEY, RENO and JAMES, JJ.

**348**

*Irving W. Coleman,* for appellant.

*Lewis R. Long,* Assistant District Attorney, with him *Stanley J. Fehr,* District Attorney, for appellee.

OPINION BY RENO, J., July 15, 1944:

Appellant was charged with burglary and larceny in two counts of a single bill of indictment, but at the trial the district attorney was required to make an election, and he chose to proceed on the larceny count only. This appeal is from the judgment and sentence on a verdict of guilty and the twenty-three assignments of error raise several questions, the most important of which is whether there is sufficient evidence to support the conviction. As the jury found against defendant, the testimony, and the reasonable inferences to be drawn from it, will be viewed in the light most favorable to the Commonwealth: *Com. v. Mezick,* 147 Pa. Superior Ct. 410, 24 A. 2d 762.

The Young Men's Independent Democratic Club of Easton was broken into during the early morning of January 14, 1944, between the hours of 3:15 A. M., when the club was closed, and 8:15 A. M., when the police arrived to find the interior of the premises in great disarrangement. It was discovered that the coin drawers of a cigarette machine, cash registers, and an auto-

matic music machine had been rifled and the money taken therefrom, and that a watch, a quantity of liquor and liquor cartons, six slot machines, and the keys to them had been removed from the clubroom.

On January 28, 1944, the authorities entered a garage on Russell Street in Allentown and found a bag of burglar's tools, six slot machines, a set of keys, and two cartons of liquor, all of which were admitted in evidence. The steward of the club identified the keys and the slot machines as those which had been on the club's premises by reason of his having retained duplicate keys which corresponded to those found in the garage and which fitted the machines produced at the trial. The club had used its empty liquor cartons for the storage of garbage and the steward was able to identify the cartons found in the garage as those taken from the clubroom because he recognized stains on them apparently made by a type of tomato pie served at the club. This witness could not state positively that the liquor recovered by the officers had ever been on the club's premises, as the bottles had no distinguishing marks, but he testified that similar bottles of liquor had disappeared the night of the larceny. The steward stated that defendant had been a visitor at the club many times and that on January 9, 1944, he had admired the watch stolen five days later.

The Commonwealth's principal witness was one William Snelling who in August, 1943, was endeavoring to perfect an invention designed to prevent untimely explosions in the powder plant at which he was employed as an explosive technician. Snelling's experimentation required the use of electrical devices and while attempting to purchase equipment of this type he was introduced to defendant who sold him a pinball machine containing some of the desired mechanisms. On August 15, 1943, Snelling rented the garage on Russell Street for use as a workshop and a storage place for

his electrical instruments. The acquaintance between Snelling and defendant continued, and defendant began to bring pinball and slot machines to Snelling for repairs, the first few machines being brought to Snelling's home. About the end of September, 1943, Snelling told defendant he might store pinball machines in the garage on Russell Street and defendant subsequently stored and had Snelling make repairs to pinball machines brought to that location. As it became inconvenient for both occupants of the garage to use Snelling's key, defendant, about the end of October, 1943, had a duplicate made for himself which he retained continuously thereafter.

Snelling determined to abandon the garage on December 15, 1943, and so advised defendant in a telephone conversation early in that month, but defendant, who still had use for a storage space, requested Snelling to continue making rental payments and promised to reimburse him. Snelling moved all his effects out of the garage prior to December 15, 1943, told defendant he had done so, and was again assured that he would be reimbursed for the future rental payments he was to make under the agreement with defendant. Although Snelling retained a key to the garage, and continued to pay the rent, he did not again enter the building until January 19, 1944, when he found the stolen property. No witness saw defendant place the property in the garage, and he was not observed at that place after December 15, 1943, when Snelling relinquished his own possession of the building. The only other key to the premises was in the possession of Mrs. Boehm, the landlady, but she did not enter the garage after August 15, 1943.

Defendant denied all complicity in the crime, stating that he never had a key to the garage and that he had not visited the place after September, 1943. He relied upon an alibi to establish his whereabouts from the

time the crime was committed until he was arrested on the evening of January 14, 1944, and it is admitted that he was in the custody of the police continuously thereafter until the time of the trial.

The Commonwealth relied upon the principle that possession of recently stolen goods is sufficient to support an inference that the possessor is the thief: *Com. v. Dock,* 146 Pa. Superior Ct. 16, 21 A. 2d 429; *Com. v. Lowry,* 153 Pa. Superior Ct. 639, 34 A. 2d 814. Appellant concedes the principle, but contends that possession must be personal and exclusive before the inference can arise, and that the evidence did not establish such possession. Undoubtedly, the fact of possession loses all persuasiveness if persons other than the accused had equal access with him to the place in which the property was discovered: 9 Wigmore on Evidence (3rd ed.) §2513. Cf. *Com. v. Ault,* 10 Pa. Superior Ct. 651. Appellant argues from this that his guilt should not be inferred from the finding of the stolen property in the Russell Street garage and cites *State v. Zoff,* 196 Minn. 382, 265 N. W. 34, and *State v. Boudreau,* 111 Vt. 351, 16 A. 2d 262, cases in which the prosecution did not eliminate the possibility that other persons entered the place in which the goods were found. The difference between those decisions and the present case is manifest, as here the Commonwealth showed that neither Snelling nor Mrs. Boehm had been in the garage at the time the goods must have been placed there, and that the only other person having access to the premises was defendant or someone acting in concert with him. There was sufficient evidence from which the jury could draw the reasonable inference that appellant exercised dominion over the garage to the exclusion of all others during the period in question, that he or some unknown person acting with him deposited the stolen goods in the garage, and that in the light of all the evidence he was guilty of larceny: *Com. v. Marino,* 142 Pa. Superior

Ct. 327, 16 A. 2d 314; *Com. v. Meyers,* 154 Pa. Superior Ct. 8, 34 A. 2d 916; *Com. v. Dock,* supra.

Over defendant's objection the recording and financial secretary of the club was permitted to testify that on January 9, 1944, defendant said: "...... they had gotten the 'go-sign' from the district attorney of Lehigh County and ...... were going to put slot machines in wherever they could. He said there was a syndicate moving into Lehigh County and they too were going to put in slot machines wherever they could, and ...... it might be advisable [to] ...... consider putting several machines into this club." The steward was also allowed to testify that on the same evening defendant had offered to bet five dollars the machines then in the club would not be there in a week or two. While these declarations may have been admissible, for what they were worth, as tending to show a possible motive and an intent on the part of defendant to commit a larceny of the slot machines on the club's premises, their admission in any event was not prejudicial to him as the evidence was subsequently stricken from the record and the jury carefully instructed to disregard entirely the alleged conversations in its deliberations.

On the direct examination of the witness Snelling it was developed that a police officer had interviewed him concerning defendant on January 19, 1944, but did not inquire about the garage. After the interview Snelling went to the garage and observed the liquor and slot machines stored there, but did not disclose the situation to the police until January 28, 1944, the next time he was interrogated by the officer. Defendant's counsel, on cross examination, asked Snelling why he had not reported his finding of the goods immediately, and intimated that the reason was that the police had told the witness that the garage was under surveillance. Snelling denied that was the reason for his failure to apprise the authorities of the presence of the

property in the building, and on redirect examination he explained that he had not thought the presence of slot machines unusual as defendant had told the witness he was in the slot machine business and machines had been stored in the garage on other occasions. Appellant now argues that the reception of this evidence was improper as it showed defendant guilty of violations of the Penal Code of June 24, 1939, P. L. 872, §603, 18 PS §4603, prohibiting gambling, the maintenance of gambling devices, etc., and did not tend to establish motive, intent, the absence of mistake or accident, a scheme or plan common to several crimes, or the identity of the accused. While it is undoubtedly true that the Commonwealth cannot, in the first instance, introduce evidence of other offenses except in the circumstances stated (*Com. v. Strantz,* 328 Pa. 33, 195 A. 75; *Com. v. Fugmann,* 330 Pa. 4, 198 A. 99) here defendant, by his own cross examination, set the door ajar by creating the inference that Snelling might have been involved in the larceny because he remained silent upon discovering the hiding place of the fruits of the crime. It has always been the function of redirect examination to explain, enlarge upon, or qualify the new matter brought out by cross examination so that the jury will not receive distorted impressions of the facts from the testimony: *Penna. R. R. Co. v. Reading,* 249 Pa. 19, 94 A. 445; *Marshall v. Marshall,* 61 Pa. Superior Ct. 513. As defendant himself created the situation making it necessary to explain Snelling's conduct, he cannot complain if the explanation is unfavorable to him.

It is also urged by appellant that the court below should have charged the jury to accept Snelling's testimony with caution, as his possession of a key to the garage made him an accomplice and that this omission in the charge is ground for reversal even though no specific request for charge covering this point was sub-

mitted to the trial judge: *Com. v. Beck*, 137 Pa. Superior Ct. 410, 9 A. 2d 175. There is nothing in the record, however, to indicate that Snelling was in any way particeps criminis and from the testimony of both men it appears that they had not seen each other for at least two months before the crime. In this state of the proofs Snelling was not an accomplice and there was no necessity that the jury be admonished against accepting his testimony without close scrutiny.

Defendant's counsel, in his closing address to the jury, confined himself, according to the opinion of the court below, principally to an excoriation of the police officer who was prosecutor in the case because no prosecutions had at that time been instituted against the club or its employes for maintaining slot machines. This attack upon the character of the prosecutor presumably was for the purpose of belittling his credibility, although his testimony was not primarily relied upon by the Commonwealth. Appellant complains because the judge in his charge told the jury that the main issue in the case was defendant's guilt, and that the police officer was not on trial. An accused cannot be denied representation by counsel, and a trial judge commits error when he directs a jury to disregard the legitimate arguments of an advocate (*Com. v. Polichinus*, 229 Pa. 311, 78 A. 382; *Com. v. Wood*, 118 Pa. Superior Ct. 269, 179 A. 756), or when he refers with contempt to an attorney's plea in behalf of a criminal defendant: *Com. v. Brown*, 309 Pa. 515, 164 A. 726. However, where accused's counsel adverts impassionedly to irrelevant and extraneous matter not upon the record, with the manifest result of beclouding the real controversy in the case, a judge who enjoins a jury to confine its deliberations to determining the defendant's guilt or innocence cannot be convicted of dereliction: *Com. v. Nye*, 240 Pa. 359, 87 A. 585; *Com. v. Nelson*, 294 Pa. 544, 144 A. 542; *Com. v. Pearlman*, 126 Pa. Superior Ct. 461, 191 A. 365.

We find no error in the remainder of the charge, which fairly reviewed the evidence on both sides and accurately instructed the jury on the law to be applied to the case.

All assignments of error are overruled; the judgment is affirmed; and it is ordered that appellant, if released on bail, appear in the court below at such time as he may be there called and that he be committed by that court until he shall have complied with his sentence or any part of it which had not been served at the time his appeal was made a supersedeas.