**CLAINOS v. UNITED STATES.**

No. 9481.

United States Court of Appeals District of Columbia.

Argued June 10, 1947.

Decided July 28, 1947.

---

[10] 1944, 320 U.S. 516, 64 S.Ct. 364, 88 L.Ed. 270.

[11] 1944, 321 U.S. 281, 64 S.Ct. 596, 88 L.Ed. 725.

[12] 1946, 327 U.S. 404, 66 S.Ct. 546, 90 L.Ed. 752, 166 A.L.R. 884.

Mr. James J. Laughlin, of Washington, D. C., for appellant.

Mr. Sidney S. Sachs, Asst. U. S. Atty., of Washington, D. C., with whom Mr. George Morris Fay, U. S. Atty., and Mr. Edward I. Molenof, Asst. U. S. Atty., both of Washington, D. C., were on the brief, for appellee.

Before STEPHENS, WILBUR K. MILLER, and PRETTYMAN, Associate Justices.

PRETTYMAN, Associate Justice.

Appellant Clainos was indicted on ten counts, three charging him with violation of the so-called White Slave Act,[1] six charging him with violation of the so-called Pandering Act of the District of Columbia,[2] and one charging him with assault. He was convicted on the three counts relating to the White Slave Act and acquitted on the other seven counts. From judgment pursuant to the conviction, he appeals.

Upon the appeal he presents eight points. We have carefully examined them all and have read the portions of the record cited to us in reference to them, but only two of them present questions of sufficient substance to merit discussion in a formal opinion. As to the others, it is sufficient to say that we find no substantial error. Evidence of his guilt under the counts upon which he was convicted was conclusive, the testimony of the principal complaining witness being corroborated not only by other witnesses but by portions of the testimony of the defendant himself.

---

[1] 36 Stat. 825, 18 U.S.C.A. § 398.

[2] 36 Stat. 833, 54 Stat. 1225, D.C.Code 1940, § 22—2705.

In the course of the trial, the principal complaining witness testified that she was afraid of the appellant. Appellant presented a witness Martel, whose testimony tended to show that the complaining witness frequently voluntarily went to meet the defendant, was jealous of him, and met and talked to him after his arrest in this case. On cross examination by the District Attorney, Martel was asked whether he had been convicted of a number of crimes. He refused to answer and was thereupon confronted with a picture which he admitted to be of himself. A detective sergeant was was then presented as a witness by the prosecuting attorney, and he testified that the picture was from the files of the Identification Bureau at Police Headquarters. On the back of the picture was a series of notations of convictions of various crimes. The witness was asked the question, "Has this record been kept as a permanent part of the files of the Metropolitan Police Department in connection with the subsequent convictions as related to the record here?" The answer, as recorded in the transcript, was: "Subsequent conviction and then it became a part of the police records." The prosecutor then offered the exhibit in evidence, and over objection by appellant the court admitted the record of the convictions. This action of the court was error.

The disputed exhibit clearly does not meet the requirements of that section of the District Code which by title relates to "Conviction may be shown—How proved."[3] That statute provides: "In order to prove such conviction of crime it shall not be necessary to produce the whole record of the proceedings containing such conviction, but the certificate, under seal, of the clerk of the court wherein such proceedings were had, stating the fact of the conviction and for what cause, shall be sufficient." Neither does the exhibit meet the requirements of the Federal Shop Book Rule.[4] That statute provides: "In any court of the United States and in any court established by Act of Congress, any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or

record of any act, transaction, occurrence, or event, shall be admissible as evidence of said act, transaction, occurrence, or event, if it shall appear that it was made in the regular course of any business, and that it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence, or event or within a reasonable time thereafter. All other circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but they shall not affect its admissibility. The term 'business' shall include business, profession, occupation, and calling of every kind." In the present case, it is sufficient to note that the question asked of the witness and his response did not meet the requirements of the statute. He was not asked whether, and he did not testify that, the record was made in the regular course of business or that it was the regular course of business to make such record at the time of the events recorded. His testimony was merely that the record was a part of the Police records.

The nature of the question presented impels us to add that we are of opinion that a record made by the Police Department of convictions in court is not a record intended by the Federal Shop Book Rule to be admissible as evidence of the convictions. That Rule is confined to records kept in the course of the business of which the transaction was a part. It does not refer to an external record which might happen to have been kept by a person outside that business. Thus, for example, if it were part of the occupation of a person or concern, such as a newspaper representative, an insurance company, or a statistical agency, to keep a record of certain kinds of events occurring in a community, that record would not be admissible as evidence of the events under the Shop Book Rule. While the Police are, of course, directly concerned with convictions for crime, and in the ordinary course of their business properly keep records of such convictions for their own information,

---

[3] 31 Stat. 1357, 32 Stat. 540, D.C.Code 1940, § 14—305.

[4] 49 Stat. 1561, 28 U.S.C.A. § 695.

such notations are not the sort of record which is admissible under the Federal Shop Book Rule. Such notations are relevant to and useful in the "business" of the Police, but the recordation of convictions is not itself part of their "business". The Rule contemplates that certain events are regularly recorded as "routine reflections of the day to day operations of a business" so that "the character of the records and their earmarks of reliability"[5] import trustworthiness. Thus, the recordation becomes a reliable recitation of the fact. The preparation and maintenance of notations of events outside the operation of the business are not the recordation contemplated. Accusations of convictions for crime are serious, and a witness's denial should not be contradicted by anything less than a record authenticated by an official directly connected with the courts, within the "business" of which the convictions occurred. The legislative history, purpose and scope of the Federal Shop Book Rule, as incorporated in the statute, have been fully discussed in Palmer v. Hoffman, 1943, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645, 144 A.L.R. 719; New York Life Ins. Co. v. Taylor, 1945, 79 U.S.App.D.C. 66, 147 F.2d 297; and Buckley v. Altheimer, 7 Cir., 1945, 152 F.2d 502. It is unnecessary to repeat that discussion here. Suffice it to say that the principles there laid down lead us to the conclusion we have here stated. The fact that Congress has, in the District statute above cited, provided with care a method of proving a conviction supports the conclusion.

■ Although the admission of this exhibit was error, we are of opinion that it did not so affect substantial rights of appellant as to require a reversal of the conviction.[6] The exhibit was offered, and admitted, to contradict a statement, or at least to impeach the credibility, of a witness who was in turn offered to contradict, or to impeach the credibility of, another witness. Moreover, the fact as to which the initial witness testified and which was being contradicted was not an essential element of the offense with which appellant was charged. The witness Martel was attempting to show that the complaining witness was not afraid of the appellant, but whether she was or was not afraid was a sidelight upon, and not a component of, the alleged violation of the White Slave Act. As we have already said, the evidence of the guilt of the appellant was conclusive. Under these circumstances, we are of opinion that an error in the admission of evidence so remotely connected with the issue in the case is not a basis for a reversal of conviction.

■ The other point which merits mention is appellant's contention that the court erred in permitting the jury to return its verdict on some of the counts before it had reached a verdict on the other counts. After the jury had been out for more than two hours and dinnertime had arrived, the court inquired whether the jury would like to go to dinner and at that time made a suggestion, saying,

"I suggest—and this is only a suggestion—that perhaps you can make orderly progress and most expeditious progress if you proceed systematically and take the various counts of the indictment, one by one, and reach a conclusion on each count, if you can, separately. If you should come to a situation where you can agree on a verdict on some of the counts, but not on the others, come in and return a verdict on those counts that you can agree on and then we will determine whether to send you back and ask you to deliberate on other counts. In that way, I think you will find that progress can be made most effectively as well as most systematically.

"I suggest that perhaps you might care to proceed in that manner after you return from dinner."

The jury followed that suggestion and returned verdicts of not guilty on Counts 4 to 9, inclusive, and at that time requested further instructions on a point of law on the first three counts. Thereafter it returned verdicts of guilty on those three counts and not guilty on the tenth count. Appellant urges that the return of the ver-

---

[5] Palmer v. Hoffman, 1943, 318 U.S. 109, 63 S.Ct. 477, 480, 87 L.Ed. 645, 144 A.L.R. 719.

[6] Federal Rules of Criminal Procedure, rule 52(a), 18 U.S.C.A. following section 687.

dicts in this manner was error, although he does not explain wherein he was prejudiced by it. In United States v. Skidmore,[7] the court held proper a return of verdicts at separate times upon two indictments which had been consolidated for trial. In United States v. Frankel,[8] the Circuit Court of Appeals for the Second Circuit held proper the separate return of verdicts upon two counts of one indictment. To the same effect is United States v. Cotter,[9] also in the Second Circuit. In the absence of any affirmative indication that the rights of the appellant were affected, we find no error in this procedure.

Affirmed.

---

[7] 7 Cir., 1941, 123 F.2d 604, certiorari denied, 1942, 315 U.S. 800, 62 S.Ct. 626, 86 L.Ed. 1201, rehearing denied, 1942, 315 U.S. 828, 62 S.Ct. 638, 86 L.Ed. 1223.

[8] 2 Cir., 1933, 65 F.2d 285, certiorari denied, 1933, 290 U.S. 682, 54 S.Ct. 119, 78 L.Ed. 588.

[9] 2 Cir., 1932, 60 F.2d 689.