### GORDON
v.
### ROBINSON et al. (Gordon, third-party defendant).
### No. 11015.

United States Court of Appeals
Third Circuit.

Argued Oct. 9, 1953.

Reargued Dec. 23, 1953.

Decided Jan. 13, 1954.

John M. Wolford, Erie, Pa. (John A. Blackmore, Erie, Pa., on the brief), for appellants.

William F. Illig, Erie, Pa. (Gifford, Graham, MacDonald & Illig, Erie, Pa., on the brief), for appellee.

Before BIGGS, Chief Judge, and MARIS, GOODRICH, McLAUGHLIN, KALODNER, STALEY and HASTIE, Circuit Judges.

McLAUGHLIN, Circuit Judge.

This is an appeal by Fletcher J. Gordon and Esther M. Gordon, his wife, from the district court's denial of their motion for a new trial and the entry of judgment on a verdict for defendant, George W. Robinson, D.C.W.D.Pa.1952, 109 F. Supp. 106. The litigation arose out of a collision between Gordon's automobile and Robinson's truck north of Union City, Pennsylvania. Jurisdiction is based on diversity, the Gordons being residents of New York, Robinson of Pennsylvania. Originally both Gordons were parties plaintiff. However, on motion of defendant a severance was granted as to Fletcher J. Gordon and he was joined as third-party defendant. For convenience both Gordons will hereafter be referred to as plaintiffs.

The two questions raised on this appeal relate solely to the admission of certain evidence, that of Michael Signorino, a Pennsylvania state police officer, and of Homer T. Eaton, an attorney. Signorino, defendant's witness, testified on direct examination that he arrived at the scene of the accident about forty-five minutes after the event. His counsel, still on direct, asked him to explain in his own words " * * * as to where the debris was with respect to the position of the truck at the time of the impact." That was objected to as calling for a conclusion and the objection was overruled. On redirect examination this officer was allowed to testify where the accident took place; that there was a violation of (presumably) the Pennsylvania Motor Vehicle Act; that plaintiffs' automobile was on the

wrong side of the road; that no improper driving of the defendant was indicated; that with reference to plaintiffs' machine no control was present[1] and that the officer recommended the plaintiff driver for a departmental hearing. All those conclusions were contained in the officer's accident report which, however, was not put into evidence. Just prior thereto, on cross-examination of the officer, plaintiffs' attorney had questioned him concerning the report, asking him for the information regarding the speed of the vehicles involved which he had obtained from questioning both drivers, also as to the allowed speeds and what plaintiff had told him about how the accident had occurred. It was immediately thereafter, on redirect examination, that the trial court permitted the witness to give the above noted conclusions on the specific theory that the defense was entitled to bring out anything else in the officer's report. This was error. The testimony was grossly improper. In effect the state policeman, in full uniform, was permitted to give the jury his conclusions on the basic issues of the litigation, the very issues they were there to decide. Cross-examination of the witness did not open the door to that evidence.

Rule 43(a),[2] Federal Rules of Civil Procedure, 28 U.S.C., has liberalized the admission of evidence in federal courts. By its terms all evidence shall be admitted which is admissible under federal statutes, rules of evidence there-tofore obtaining in equity matters, or under the rules of the courts of general jurisdiction in the state where the court is held. We have, however, neither been referred to nor have we found any rule of evidence in the above three sources which supports defendant's contention. It is clear that there is no federal statute on the point and nothing in the old equity rules sheds any light on the problem. As to the law of Pennsylvania, it supports plaintiffs' position that an error in the admission of evidence on cross-examination, whether or not it is objected to, does not qualify further evidence, otherwise inadmissible, on redirect examination.

In Smith v. Dreer, 1838, 3 Whart., Pa. 154, an action by a gas fitter to recover the amount of a bill for work and labor done, defendant called a witness to testify that the work was done in an unworkmanlike manner. On cross-examination plaintiff adduced testimony that he, plaintiff, had made gas fittings at other places besides defendant's establishment. On redirect defendant's counsel sought to establish that the work done at those places was defective, to which plaintiff objected, whereupon the court disallowed the witness to be so examined. On appeal this was assigned as error. In affirming, the Supreme Court said:

"The principle of Griffith v. Eshelman,[3] that cross-examination to irrelevant matters shall not bring it into the issue, is decisive of the point here. The defendant might

---

1. It is apparent from the transcript that the redirect examination of the witness on this point created the impression that plaintiffs' machine was out of control and not that there was no traffic control of the area where plaintiffs' automobile was traveling.

2. Rule 43(a) reads as follows:
 "Rule 43. Evidence
 "(a) Form and Admissibility. In all trials the testimony of witnesses shall be taken orally in open court, unless otherwise provided by these rules. All evidence shall be admitted which is admissible under the statutes of the United States, or under the rules of evidence heretofore applied in the courts of the United States on the hearing of suits in equity, or under the rules of evidence applied in the courts of general jurisdiction of the state in which the United States court is held. In any case, the statute or rule which favors the reception of the evidence governs and the evidence shall be presented according to the most convenient method prescribed in any of the statutes or rules to which reference is herein made. The competency of a witness to testify shall be determined in like manner."

3. 1835, 4 Watts, Pa., 51.

have excluded the evidence of the plaintiff's agency in putting up gas-fittings at the exchange and other places; and prejudice from his omission to do so, can certainly not entitle him to draw the inquiry still further from its course. The issue is, whether the particular work for whose price suit is brought, has been done in a workmanlike manner; and the plaintiff's engagements on the one hand, or his fulfilment of them on the other, cannot be suffered to affect it."

An analogous situation was presented in Swank v. Phillips, 1886, 113 Pa. 482, 6 A. 450, where it was held error to permit incompetent witnesses to testify on the same matter as to which the opposing party, also an incompetent witness, had given testimony, the court saying that one error could not be corrected by committing another. See also Griffith v. Eshelman, 1835, 4 Watts, Pa., 51, supra, note 5; cf. Sherwood v. Titman, 1867, 55 Pa. 77 and Commonwealth v. Kauffman, 1944, 155 Pa.Super. 347, 38 A.2d 425.

In the instant case defendant did not limit himself to correcting errors in the admission of testimony on cross-examination. The manifest purpose of his redirect examination was not to discredit or explain the cross-examination that being on the whole very favorable to defendant, but to bring out new matter in the form of *other* opinions and conclusions of Signorino relating to the accident.

▆ We do not see that the above substantial error can fairly be ignored on the ground that it was not called to the attention of the trial judge in accordance with Rule 46, F.R.C.P.[4] While it is true that ordinarily errors in a jury trial which are not brought to the attention of the trial court will not be considered, on appeal, United States v. Atkinson, 297 U.S. 157, 56 S.Ct. 391, 80 L.Ed. 555, we do not agree that plaintiffs failed to apprise the court of their objections to the testimony. As has already been noted plaintiffs' attorney had promptly objected when Signorino first started giving his conclusions as to how the accident happened and had been overruled. Later on redirect when the witness began to state his above mentioned conjectures the attention of the court was once more called to this and the following colloquy occurred:

"Mr. Wolford (Counsel for plaintiffs): If it please the Court, we are again getting back to conclusions. If he is going to reach conclusions, I want the full explanation for it. Here is an officer that arrives at the scene of the accident forty-five minutes late, looks at the debris and testified in Court that what he found was the result of that observation.

"Mr. Illig (Counsel for defendant): If the Court please, the officer has been attempting to testify to the best of his knowledge as to his investigation and Mr. Wolford has been given full latitude to cross examine with regard to this report, Your Honor permitted him full use of it, so that I think, in fairness, if there is anything else in the report of the officer, it being understood that it is his report, that we should have the right to bring it out.

"The Court: You do, I agree with you."

It should not, in our opinion, be decisive that counsel failed to use the word "ob-

---

4. Rule 46, Federal Rules of Civil Procedure reads as follows:

"Rule 46. Exceptions Unnecessary

"Formal exceptions to rulings or orders of the court are unnecessary; but for all purposes for which an exception has heretofore been necessary it is sufficient that a party, at the time the ruling or order of the court is made or sought, *makes known to the court the action which he desires the court to take* or his objection to the action of the court and his grounds therefor; and, if a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection does not thereafter prejudice him." (Emphasis supplied.)

jection" so long as he did not sit mute and invite or acquiesce in the error of which he now complains, nor that he failed to object to each and every question and answer relating to the report in view of the court's indication that it would not sustain that type of objection even if made. It is interesting to note that the district judge who considered plaintiffs' motion for a new trial did not, in the opinion denying the motion, comment on the failure to enter formal objections to the line of testimony the admission of which was one of the grounds urged on the motion. 109 F.Supp. 106, 107, 108.

Due to the intervening death of the trial judge the motion for a new trial was passed upon by a district judge strange to the case who was in the difficult situation of making his decision from the bare record. He ruled that Signorino's testimony had been rightfully admitted into evidence under the Federal Business Records Act, 28 U.S.C. § 1732. As we see it that doctrine is not applicable here. The report itself was not in evidence and the disputed Signorino testimony was allowed for the expressed reason that the direct examination had opened the door for it. The Federal Business Records Act was not invoked as a ground for the admission of the evidence and did not appear in the case at all until the reference to it in the opinion disposing of the motion for a new trial. However, because that opinion indicates that some confusion may exist in this circuit as to what is admissible under the statute when properly invoked, we take the opportunity of stating our view of its purpose and function.

The legislative history of the Business Records Act clearly shows that it was not the intent of the draftsmen to make admissible all evidence, no matter how incompetent or irrelevant, merely by virtue of the fact that it appeared in a record made in the regular course of business. Rather it was Congress' purpose to admit into evidence entries of a purely clerical or routine nature not dependent upon speculation, conjecture or opinion, where "accuracy is substantially guaranteed by the fact that the record is an automatic reflection of observations" [5] without the necessity of calling the various entrants to identify the entries as their own, as was required under the common law shop book rule.[6]

5. New York Life Ins. Co. v. Taylor, 1945, 79 U.S.App.D.C., 66, 147 F.2d 297, 303, summarizing 5 Wigmore on Evidence (3rd Ed., 1940) Section 1522.

6. The Senate Judiciary Committee, reporting on the bill said:

"The old common-law rule requires that every book entry be identified by the person making it. This is exceedingly difficult, if not impossible, in the case of an institution employing a large bookkeeping staff, particularly when the entries are made by machine. In a recent criminal case the Government was prevented from making out a prima-facie case by a ruling that entries in the books of a bank, made in the regular course of business, were not admissible in evidence unless the specific bookkeeper who made the entry could identify it. Since the bank employed 18 bookkeepers, and the entries were made by bookkeeping machines, this was impossible." S.Rep. No. 1965, 74th Cong., 2d Sess., pp. 1, 2.

Referring to the same case, Chairman Sumners of the House Judiciary Committee in explaining the bill on the floor stated:

"The circuit judge, sitting as a trial judge, held that record books kept in the ordinary course, would not be admissible unless the Government produced the individual who had made the entry, who could testify with reference to the making of the entry, and so forth. Of course, according to the manner that books are now kept, many times entries are made by machines. It may be that a dozen or a half a dozen people will make entries in a set of books and nobody will be able to swear that he made a given record.

"Personally, I am ashamed to ask the House to pass this bill. This holding by the judge is ridiculous. It is more than that, but that is the situation that has developed up there. I do not understand how any judge can hold, in view of what is generally accepted, that one must bring the identical person who made

The leading Supreme Court case is to the same effect. In Palmer v. Hoffman, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645, Mr. Justice Douglas, speaking for a unanimous court, held that an accident report prepared by a railroad was not admissible as a business record within the statute, then 28 U.S.C. § 695, because not made in the regular course of business, the railroad's business being railroading, not litigating.[7] Notwithstanding the narrow holding that the report was not made in the regular course of business, the court assuming for the purposes of the case that it would otherwise qualify for admission under the Act, Mr. Justice Douglas discussed the history of the legislation, quoting with approval the excerpt from the report of the Senate Committee on the Judiciary, supra Note 5, as well as certain enlightening language of Judge Learned Hand in Massachusetts Bonding & Ins. Co. v. Norwich Pharmacal Co., 2 Cir., 1927, 18 F.2d 934, 937.[8]

While the decisions interpreting the Act, including our own, are somewhat at variance with each other[9] we do think

the identical entry, before that entry can be introduced in evidence where the books kept are regularly and properly kept in the ordinary course of business. *But he has held it, and this bill has been introduced for the purpose of curing that situation."* (V. 80, 5733. Apr. 20, 1936.) (Emphasis supplied.)

7. The report appears to have been self-serving, the Court of Appeals having stated with respect thereto that it was "dripping with motivations to misrepresent." Hoffman v. Palmer, 2 Cir.,1942, 129 F.2d 976, 991.

8. Mr. Justice Douglas, commenting on this language, said "The problem [the restrictions of the hearsay rule which often made it difficult to prove records where those who made the records were numerous] was well stated by Judge Learned Hand in Massachusetts Bonding & Ins. Co. v. Norwich Pharmacal Co., 2 Cir., 18 F.2d 934, 937: 'The routine of modern affairs, mercantile, financial and industrial, is conducted with so extreme a division of labor that the transactions cannot be proved at first hand without the concurrence of persons, each of whom can contribute no more than a slight part, and that part not dependent on his memory of the event. Records, and records alone, are their adequate repository, and are in practice accepted as accurate upon the faith of the routine itself, and of the self-consistency of their contents. Unless they can be used in court without the task of calling those who at all stages had a part in the transactions recorded, nobody need ever pay a debt, if only his creditor does a large enough business.' "

A further clue to the light in which the Supreme Court viewed the statute is the following language, 318 U.S. 113–114, 63 S.Ct. 480, taken from its discussion of the admissibility of records made in preparation for trial:

"The probability of trustworthiness of records because they were routine reflections of the day to day operations of a business would be forgotten as the basis of the rule. See Conner v. Seattle, R. & S. Ry. Co., 56 Wash. 310, 312–313, 105 P. 634, 25 L.R.A., N.S., 930. Regularity of preparation would become the test rather than the character of the records and their earmarks of reliability (Chesapeake & Delaware Canal Co. v. United States, 250 U.S. 123, 128–129, 39 S.Ct. 407, 408, 409, 63 L.Ed. 889) acquired from their source and origin and the nature of their compilation. We cannot so completely empty the words of the Act of their historic meaning. If the Act is to be extended to apply not only to a 'regular course' of a business but also to any 'regular course' of conduct which may have some relationship to business, Congress not this Court must extend it. Such a major change which opens wide the door to avoidance of cross-examination should not be left to implication. Nor is it any answer to say that Congress has provided in the Act that the various circumstances of the making of the record should affect its weight not its admissibility. That provision comes into play only in case the other requirements of the Act are met."

9. The leading cases in this circuit are Pollack v. Metropolitan Life Ins. Co., 3 Cir., 1943, 138 F.2d 123; Ettelson v. Metropolitan Life Ins. Co., 3 Cir., 1947, 164 F.2d 660; Masterson v. Pennsylvania R. Co., 3 Cir., 1950, 182 F.2d 793; Moran v. Pittsburgh-Des Moines Steel Co., 3 Cir., 1950, 183 F.2d 467 and McKee v. Jamestown Baking Co., 3 Cir., 1952, 198 F.2d 551. The latter case is cited by the district court for the proposition that "[a] police report made in

that there is no real conflict over its avowed purpose and that a record, to be admissible, should derive from an efficient clerical system and should be of such a nature that it would be competent evidence if testified to by its maker.

 Plaintiffs also assign as error the admission of Homer T. Eaton's testimony. The undisputed evidence shows that at the scene of the accident the highway, when viewed from the direction from which plaintiffs' vehicle was approaching, curves to the right. On cross-examination Gordon stated that he did not sign a statement to the effect that the highway curved to his left at that point, denied having signed any statement and further denied having called Eaton to the hospital where he, Gordon, was taken after the accident.

The defense called Eaton who, it developed, was attorney for Gordon's liability insurance carrier. Over plaintiffs' objection Eaton was permitted to testify that he took a signed statement from Gordon at the hospital, in the presence of Eaton's stenographer and Gordon's stepson, in which Gordon said the highway curved to his left. The basis of the objection was the claimed attorney-client relationship between Eaton and Gordon

which, it is asserted, made the testimony privileged.[10]

Defendant argues that no error was committed in permitting Eaton's testimony to go in because there was no offer of proof that Eaton was Gordon's attorney. We agree that the attorney-client privilege may not here be invoked in favor of Gordon merely because Eaton represented Gordon's insurance carrier absent a showing that he also represented Gordon. There is no testimony that Eaton did any more in connection with the accident than procure the statement adverted to for the insurance carrier. It is significant in this connection that Gordon denied knowing Eaton. The Pennsylvania Act of 1887, P.L. 158, Section 5, cl. (d), 28 P.S.Pa. § 321, made applicable to this case by Rule 43(a), Federal Rules of Civil Procedure, supra, reads in part as follows:

"Nor shall counsel be competent or permitted to testify to confidential communications made to him *by his client * * *.*" (Emphasis supplied.)

Manifestly there has been no showing that Gordon was Eaton's client in any sense of the term. Concluding as we do that there was no proof of the existence

an official capacity is deemed to be made in the regular course of business and is, therefore, admissible in evidence." Apparently the pertinent matter appearing in the report involved in the McKee case was testified to competently. We therefore confine that case to its particular facts. Generally speaking, however, the attempted introduction into evidence of police reports under the authority of 28 U.S.C. § 1732 is governed by the test above outlined.

For cases from other circuits see Gencarella v. Fyfe, 1 Cir., 1948, 171 F.2d 419; Chapman v. United States, 5 Cir., 1952, 194 F.2d 974, certiorari denied 344 U.S. 821, 73 S.Ct. 19; Schmeller v. United States, 6 Cir., 1944, 143 F.2d 544 and New York Life Ins. Co. v. Taylor, 1945, 79 U.S.App.D.C. 66, 147 F.2d 297. See also Clainos v. United States, 1947, 82 U.S.App.D.C. 278, 163 F.2d 593; New York Life Ins. Co. v. Taylor, 1946, 81 U.S.App.D.C. 331, 158 F.2d 328,

and McWilliams v. Lewis, 1941, 75 U.S. App.D.C. 153, 125 F.2d 200. Cf. Pekelis v. Transcontinental & Western Air, Inc., 2 Cir., 1951, 187 F.2d 122, 23 A.L.R.2d 1349, certiorari denied 341 U.S. 951, 71 S.Ct. 1020, 95 L.Ed. 1374 and Korte v. New York, N.H. & H.R. Co., 2 Cir., 1951, 191 F.2d 86, certiorari denied 342 U.S. 868, 72 S.Ct. 108, 96 L.Ed. 652.

10. It appears from the transcript of a conference at side bar that the trial judge permitted Eaton to testify, despite plaintiffs' invocation of the attorney-client privilege, because Gordon had made a contradictory statement concerning the location of the curve. Plaintiffs correctly argue that the privilege, if it exists, may not be so destroyed. The judge who heard the motion for a new trial apparently also assumed that Eaton was Gordon's attorney but held that there was no privilege because of the presence of Gordon's stepson at the time Eaton visited Gordon in the hospital.

of an attorney-client relationship between Eaton and Gordon it becomes unnecessary to decide whether the presence of Gordon's stepson at the time Gordon's statement was taken served to destroy the privilege.[11]

■ There is, moreover, another factor which minimizes the effect of Eaton's testimony. Eight days after Gordon's statement to Eaton he made a similar statement to one D. B. Connell, an adjuster for the same insurance carrier, in which he also located the curve on his left. The statement was produced on cross-examination of Gordon and the latter identified the signature on it as his own. Assuming, therefore, that there was harm to plaintiffs, as is urged by them, in permitting the jury to hear Eaton's testimony, it would appear that the harm is insubstantial, Eaton's testimony being merely cumulative of other evidence properly in the record.

The judgment will be reversed and the cause will be remanded for a new trial.

GOODRICH, Circuit Judge, concurs in the result but joins Judge HASTIE in reserving opinion on the evidence point concerning reports.

HASTIE, Circuit Judge (dissenting).

The only interposition by defense counsel during the trial which, in my judgment, constituted a challenge to the competency of any testimony of the witness Signorino was an objection to his statement concerning the location of debris after the accident. There was no dispute concerning the location of this debris. Accordingly, the admission of this testimony was at worst harmless error. Various other statements of Signorino, now challenged as improper conclusions and objectionable hearsay, were admitted without objection at various times during the rather lengthy testimony of this witness. In these circumstances, I think there was an effective

waiver of any objection which might have been made to this testimony. Its admission, therefore, was not reversible error.

The opinion of the court also contains some discussion of the coverage of the Federal Business Records Act. I prefer to express no opinion on this matter until there is occasion to do so in relation to some specific issue which depends upon the construction of the language of the statute.

I would affirm the judgment simply on the ground that the objections to the admission of evidence, which the court is sustaining on this appeal, come too late.

---

**11.** If at the new trial this episode becomes important the full facts concerning the presence of the stepson at the meeting between Gordon and Eaton should be developed in order that its legal significance may be properly passed upon.