**STEGEMANN**

v.

**MIAMI BEACH BOAT SLIPS, Inc.**

No. 14767.

United States Court of Appeals
Fifth Circuit.

June 9, 1954.

Rehearing Denied Aug. 2, 1954.

Otto C. Stegemann, Miami Beach, Fla., for appellant.

Robert A. Peterson, Copeland, Therrel & Baisden, Miami Beach, Fla., for appellee.

Before STRUM and RIVES, Circuit Judges, and DAWKINS, District Judge.

DAWKINS, District Judge.

Appellee libeled the cabin cruiser Clara Sue, belonging to appellant, for storage, labor and materials alleged to have been furnished to said vessel in the sum of $757.77. After certain exceptions by claimant, including a motion for particulars, complainant amended its libel and attached itemized invoices making up the demand. The claimant then answered, admitting in part some of the items, denying others, and reconvened by cross claim for damages to the vessel in the sum of $1,200.00 alleged to have been caused by the negligent failure of libelant to protect it against a windstorm.

The court below found that the libelant had furnished, at the request of the respondent, storage at the agreed rate of $10.00 per month for nine months and labor and materials in the sum claimed, $427.77, or a total of $517.77, for which it gave judgment. It rejected the cross claim for damages, holding respondent had failed to support the same by a fair preponderance of the evidence.

Claimant alone has appealed.

Alleged errors are in substance: I. Libelant failed to sustain the burden of proof as to any of its claims for (a) storage, (b) labor and materials, and the trial court erred (c) in holding libelant "not guilty" of negligence causing the damage to appellant's vessel, and further (d) in failing to make specific findings of fact as to the cross claim; II. The trial court erred in admitting libelant's ledger sheet in evidence "without adequate predicate laid" in that (a) the original time and work sheets were available but not produced, (b) as were the workmen who allegedly performed the labor, (c) that "admittedly" the labor and materials were not furnished at the request of the appellant, and (d) that libelant's evidence in support of its claim is "conflicting, contradictory and unreliable."

The record is unnecessarily long with much confusion, some of it arising from appellant making statements of fact in his questions and the court repeatedly urging the witnesses to speak out; unfinished questions and answers; and a badly transcribed record. The litigants each used two witnesses, those of the libelant being William Jourgens, superintendent of its slips, and Allen Thompson, its accountant and office manager, each of whom testified at the trial. For respondent, the appellant himself, and one Fred Snowflack, the latter giving his testimony by deposition.

Jourgens testified at length on direct and extensively on cross examination, using invoices as to materials furnished and the labor performed in his presence and under his supervision. He stated that, initially, he was called "by a person to send our tow boat over to a place on Miami Beach, a boat was sinking * * to pump the boat out and bring it to the boat slip" (libelant's place of business), which was done, and that he "hauled her out" (presumably of the water) "for repairs". He then described in detail what was done to the vessel. The witness further testified that the day after the boat arrived at the slip, he met respondent, who authorized the making of certain repairs. Jourgens was then cross examined quite fully but stuck to the statement that the materials were furnished to his knowledge and the labor performed under his supervision. He further stated prices were usual, fair and reasonable.

Thompson also testified that he was the accountant and office manager for libelant's boat slips and identified the invoices attached to the amended libel as a part of the complaint, as having been furnished to respondent and that they had been in his custody at all times in the capacity stated. When these copies of invoices were offered in evidence, respondent, who was his own lawyer, objected that they had not been "properly

identified \* \* \* there is no evidence they were ever sent to me or served upon me except after the suit was started and they were filed as libelant's bill of particulars." Thereupon counsel for libelant established by the witness that they had been sent to respondent in due course.[1] He had taken from its files the invoices upon which the testimony of the two witnesses was given.

### Defendant's Evidence.

Respondent testified in narrative form, first disputing the testimony of Jourgens that the boat was in sinking condition, but that libelant was called to tow it in to the slip because of a threatened storm and that it was "in very excellent condition. There was the ordinary normal water in the bilge". Counsel for the libelant objected rather weakly to this method of putting on defendant's case, but since there was no jury, it was agreed, at the suggestion of the Court, that the witness continue with the narrative. He then proceeded to describe a conversation with Jourgens to the effect that "I am not going to spend a lot of money on this boat because I can't afford it." He further stated that he had said to Jourgens, "It looks like I may have to leave the boat here for a little while" and that it was agreed that he should pay $10.00 per month "as long as the boat was in the yard". The witness' statement then continued for some 30 pages on direct and about 20 more on cross examination, involving mainly disputing of the testimony of Jourgens and giving of his own version as to what was necessary and actually done, the unreasonableness of the charges, etc.

The testimony of respondent's second witness, Fred Snowflack, was taken by deposition, and he testified that he visited libelant's slip "nearly every day from about May 20th, 1951 to about July 3rd, 1951" and " \* \* \* was working on \* \* \* the boat, the Clara Sue" for respondent; otherwise his testimony dealt largely with the question of mooring the boat in support of respondent's counter-claim which was to the effect that he had left the boat properly tied to the dock when leaving the evening before the storm and the alleged damages for which appellant reconvened.

■ Appellant's chief complaint, as above stated, is that libelant failed to call witnesses who made the invoices for materials and the mechanics who performed the labor, but instead rested its case upon the ledger sheet which, he argues, was not admissible without this supporting testimony. We cannot agree with appellant's argument. Sec. 1732 (formerly Sec. 695), 28 U.S.C., provides in substance that a record of any act or transaction is admissible in evidence, prima facie, if made in the regular course of business at the time of such act or transaction or within a reasonable time thereafter. The purpose of this law was to render unnecessary the strict requirements of the common law for producing as witnesses every person who had anything to do with the record in order to prove its authenticity. Palmer v. Hoffman, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645; New York Life Insurance Co. v. Taylor, 79 U.S.App.D.C. 66, 147 F.2d 297; Clainos v. United States, 82 U.S. App.D.C. 278, 163 F.2d 593. See also

---

1. "Q. Are statements as outlined in Exhibit A, to which you just referred, sent to the debtors of the corporation at regular intervals? A. That is right.

"Q. Is that the usual, standard procedure? A. Yes, sir.

"Q. Do you know in this particular case whether statements were sent to the respondent, that is, Mr. Stegemann, in this instance, the owner of the vessel? A. They have been.

"Q. Was this exhibit prepared from the original books and entries of the Miami Beach Boat Slips, Inc.? A. That is, the original?

"Q. Yes, sir. A. Yes; that is, the— they were prepared from the records of the Miami Beach Boat Slips. We have the records over there to verify copies, and the ledger sheets.

"Q. I will hand you herewith this document and ask you to identify this? A. This is a sheet from our ledger that we had at the time this was written up, showing the account of the Yacht Clara Sue & owner."

Pekelis v. Transcontinental & Western Air, Inc., 2 Cir., 187 F.2d 122, 23 A.L.R. 2d 1349; Korte v. New York, N. H. & H. R. Co., 2 Cir., 191 F.2d 86; Waters v. Kings County Trust Co., 2 Cir., 144 F.2d 680; U. S. v. Feinberg, 2 Cir., 140 F.2d 592, 154 A.L.R. 272; Overfield v. Pennroad Corporation, D.C., 42 F.Supp. 586.

■ Here the accountant employed by libelant testified that he wrote the ledger sheet himself and took the information from the invoices and that this was done in the regular course of business as a routine matter. It therefore seems clear that both the ledger sheet and the invoices were properly admissible in evidence.

■■ In the light of Jourgens' testimony outlined above and that of Thompson, the accountant, to the sending of monthly statements in due course to respondent as the work progressed, which were never questioned by appellant (although denied in his testimony after the suit was filed), the issue was one of fact for the trial judge who (except as to respondent's witness Snowflack) saw and heard the witnesses testify. Libelant's case did not depend entirely upon the ledger sheet but was strongly supported by the testimony of both Jourgens and Thompson, who were present as superintendent and accountant engaged in the operation of the libelant's business. There are some discrepancies as to details but, on the whole, we believe there was substantial evidence to support the finding of the lower court with respect to libelant's claims and in such circumstances, it should not be disturbed. See C. J. Dick Towing Co. v. The Leo, 5 Cir., 1953, 202 F.2d 850, 851, and authorities cited therein; Escandon v. Pan American Foreign Corporation, 5 Cir., 1937, 88 F.2d 276.

As to the cross claim for damages caused by the storm, the evidence is in practically the same condition of conflict. There had been a previous storm on October 18, prior to the one in which the alleged damage claimed in the cross bill was caused, at which time the libelant had sufficient warning and protected the boat against damage; and this is one of the items in the libelant's claim which is questioned by the appellant. We do not feel it necessary to go at length into the details of the evidence since there is a substantial sufficiency to support the lower court's ruling. It appears that Snowflack was looking after the boat and testified that he had left it moored safely before leaving the slips on Sunday night before the storm allegedly causing the damage. He gave further testimony about finding after the storm that certain ropes were off of parts of the vessel and that one in particular was broken. Witnesses for appellee denied any connection with removal of ropes or other disturbance of the mooring as left by Snowflack.

■ When a vessel is placed at a wharf or dock for storage and/or repairs, a bailment results for the mutual benefit of the owner of the vessel and the operator of the wharf or dock. Orrell v. Wilmington Iron Works, Inc., 4 Cir., 1950, 185 F.2d 181; Pan-American Petroleum Transp. Co. v. Robins Dry Dock & Repair Co., 2 Cir., 281 F. 97; Knecht v. Castleman River R. Co., D.C., 25 F. Supp. 650; The Gladys, D.C., 49 F.Supp. 780. Unless stipulated otherwise, such a bailment imposes upon the bailee the duty of ordinary care. See authorities cited, and The William Rockefeller, D.C., 57 F.2d 897; Commercial Molasses Corp. v. New York Tank Barge Corp., 314 U.S. 104, 62 S.Ct. 156, 86 L.Ed. 89; Lake Union Dry Dock & Machine Works v. United States, 9 Cir., 79 F.2d 802.

■ The burden of proof of negligence is on the bailor, but by proving that the vessel was delivered to the bailee in good condition and damaged while in his possession, the bailor makes out a prima facie case of negligence; and the duty then devolves upon the bailee to go forward with the evidence and show affirmatively that he exercised ordinary care. See authorities cited, and Southern Ry. Co. v. Prescott, 240 U.S. 632, 36 S. Ct. 469, 60 L.Ed. 836.

In Commercial Molasses Corporation v. New York Tank Barge Corporation, supra, the Supreme Court explained the relative positions of the litigants by pointing out that the bailor, upon proof of bailment and damage to his goods while in possession of the bailee, is entitled to the inference of fact that there was a breach of duty of care. But it adds:

"* * * it [the inference of fact] does no more than require the bailee, if he would avoid the inference, to go forward with evidence sufficient to persuade that the nonexistence of the fact, which would otherwise be inferred, is as probable as its existence. *It does not cause the burden of proof to shift, and if the bailee does go forward with evidence enough to raise doubts as to the validity of the inference, which the trier of fact is unable to resolve, the bailor does not sustain the burden of persuasion which upon the whole evidence remains upon him, where it rested at the start.*" 314 U.S. 111, 62 S.Ct. 161. (Emphasis by the writer.)

■ Where the delivery of the thing is not complete, as when the owner remains with the thing or has an independent agent or employee responsible for it or for certain aspects of its care, there is a corresponding limitation on the bailment and the duty of the bailee. Chicago, St. L. & N. O. Railroad Co. v. Pullman Southern Car Co., 139 U.S. 79, 11 S.Ct. 490, 35 L.Ed. 97; City Compress & Warehouse Co. v. United States, 4 Cir., 190 F.2d 699.

■ Without finding it necessary to discuss the conflicting statements, there was substantial evidence to support the findings of fact by the lower court. As to the demand of the appellant on the cross claim, it was found he had failed to sustain the burden of proof as to appellee's negligence. With this we cannot disagree. The judgment appealed from is

Affirmed.